# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

IRMA JEAN CARTER, et al.                                    CIVIL ACTION

VERSUS                                                      17-201-SDD-RLB

N. BURL CAIN, et al.

## RULING

Before the Court is the *Motion to Dismiss*[1] filed by Defendants James LeBlanc, N. Burl Cain, Darryl Vannoy, Leslie Dupont, James Cruze, Barrett Boeker, and Jonathan London (collectively, "Defendants"). Plaintiffs, Irma Jean Carter, Christa Carter, and Does 1-5 ("Plaintiffs") filed an *Opposition*,[2] to which Defendants filed a *Reply*.[3] For the reasons which follow, the *Motion* is granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2016, Terrance Carter was found dead in his cell at Camp J in the Louisiana State Penitentiary ("LSP"), where he was an inmate.[4] Carter's mother, sister, and other siblings subsequently brought the present lawsuit, alleging that Carter had "years of documented mental health problems"[5] and that various officials at LSP "drafted, authorized, condoned, and/or knowingly acquiesced to the unconstitutional policy of housing mentally ill inmates . . .in Camp J, referred to as disciplinary or administrative segregation."[6]

---

[1] Rec. Doc. No. 48.
[2] Rec. Doc. No. 52.
[3] Rec. Doc. No. 53.
[4] Rec. Doc. No. 4, p. 2.
[5] Rec. Doc. No. 47, p. 1.
[6] Rec. Doc. No. 4, pp. 3-4.

49676

On May 30, 2017, Defendants filed a *Motion to Dismiss*,[7] arguing that "Plaintiffs are not the proper parties to bring the claims brought, lack standing and failed to state a claim."[8] Among other arguments, Defendants contended that Carter's siblings were not proper parties under Louisiana's wrongful death and survival statutes, which allow the decedent's parents to recover in such a lawsuit, to the exclusion of other, lower-ranked beneficiaries.

In its *Ruling*[9] on the *Motion to Dismiss*, this Court found Plaintiffs' *Complaint* deficient because it "fail[ed] to affirmatively negate the existence of any primary beneficiaries (i.e., spouse or children) who can bring a survival or wrongful death action."[10] Plaintiffs were ordered to file an amended *Complaint* addressing that deficiency. They did so, adding one line: "Decedent Terrance Carter was not survived by a spouse or children."[11] Defendants then re-urged their *Motion to Dismiss*.[12]

In their re-urged *Motion to Dismiss*, Defendants raise numerous issues. First, they reassert their argument that Carter's siblings are not proper parties to a wrongful death or survival action because Irma Jean Carter, Carter's mother, is alive and party to this suit. Second, they argue that Plaintiffs fail to state a claim under the Americans with Disabilities Act and the Rehabilitation Act, and that, in any event, Plaintiffs lack standing to bring a claim under those statutes. Additionally, Defendants seek dismissal of Plaintiffs' claims for money damages brought against LSP officials in their official capacities

---

[7] Rec. Doc. No. 24.
[8] Rec. Doc. No. 24, p. 1.
[9] Rec. Doc. No. 46.
[10] Rec. Doc. No. 46, p. 3.
[11] Rec. Doc. No. 47, p. 3.
[12] Rec. Doc. No. 48.
49676

because, they argue, those claims are barred by the doctrine of sovereign immunity. Likewise, they argue, the official capacity claims for prospective injunctive relief should be dismissed because Plaintiffs lack standing. The Court will address Defendants' arguments in turn.

## II.    LAW AND ANALYSIS

### A. Motions to Dismiss Under Rules 12(b)(1) and 12(b)(6)

#### 1.  Rule 12(b)(1)

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.'"[13]  If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "'the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6).'"[14]  The reason for this rule is to preclude courts from issuing advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a case with prejudice.'"[15]

"Article III standing is a jurisdictional prerequisite."[16]  If a plaintiff lacks standing to bring a claim, the Court lacks subject matter jurisdiction over the claim, and dismissal

---

[13] *Crenshaw–Logal v. City of Abilene, Texas*, 436 Fed.Appx. 306, 308 (5th Cir. 2011)(quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); s*ee also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir.2011); Fed.R.Civ.P. 12(h)(3)).

[14] *Crenshaw–Logal*, 436 Fed.Appx. at 308 (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977)).

[15] *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), and *Ramming*, 281 F.3d at 161).

[16] *Crenshaw–Logal*, 436 Fed.Appx. at 308 (citing *Steel Co.*, 523 U.S. at 101, 118 S.Ct. 1003, and *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989)).

49676

under Rule 12(b)(1) is appropriate.[17]   The party seeking to invoke federal jurisdiction bears the burden of showing that standing existed at the time the lawsuit was filed.[18]   In reviewing a motion under 12(b)(1) for lack of subject matter jurisdiction, a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[19]

2.  Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[20]   The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[21]   "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[22]   In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

---

[17] *Whitmore v. Arkansas*, 495 U.S. 149, 154–55, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir.1997).
[18] *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Ramming*, 281 F.3d at 161.
[19] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981).
[20] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[21] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[22] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d at 467).
49676

of the elements of a cause of action will not do."[23]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[24]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[26]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[27]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[28]

### B. Wrongful Death Claims

#### 1. Standing

Plaintiffs' Sixth Cause of Action is entitled "State Law Wrongful Death."[29] Defendants argue that under Louisiana law, Terrance Carter's mother, Irma Jean Carter, "is the only proper plaintiff"[30] to bring this claim. The Court agrees. "As a threshold matter, any party bringing suit must have standing to do so, and the [United States Court of Appeals for the] Fifth Circuit has instructed district courts to evaluate state law concepts

---

[23] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).
[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[25] *Twombly*, 550 U.S. at 570.
[26] *Iqbal*, 556 U.S. at 678.
[27] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[28] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[29] Rec. Doc. No. 47, p. 24.
[30] Rec. Doc. No. 48-1, p. 5.
49676

. . . to establish standing in wrongful death and survivorship actions."[31]  Under Louisiana Civil Code Articles 2315.1 and 2315.2, the right of a survival or wrongful death action is afforded to four exclusive categories of survivors.  However, the statutes do not allow for multiple classes of survivors, *e.g.,* both the mother and siblings of the decedent, to recover.  Rather, the existence of a person within a higher class precludes a person in a lower class from filing suit.[32] The primary category under both 2315.1 and 2315.2 includes the surviving spouse and/or children of the decedent. The second category includes "the surviving father and mother of the deceased, or either of them if he left no spouse or child surviving."[33] Siblings are only permitted to recover under the third category, and then only if [the decedent] left no spouse, child, or parent surviving."[34]

Plaintiffs aver in their *Complaint* that "Plaintiff Irma Jean Carter is Terrance Carter's mother."[35] The law is clear that Irma Jean Carter, who, as the decedent's mother, ranks in the second category, excludes any of Terrance Carter's siblings from recovering in a wrongful death action. Therefore, all Plaintiffs except Irma Jean Carter lack standing to bring their wrongful death and survival claims, and those claims shall be dismissed with prejudice. The wrongful death claim may continue with Irma Jean Carter as Plaintiff.[36]

---

[31] *Howell v. Hillcorp Energy Co.*, No. 12–0293, 2013 WL 1455758, *3 (E.D. La. 2013).
[32] *See Kumasi v. Cochran*, No. 2015 WL 4429192 at *3 (M.D. La. July 17, 2015).
[33] La. C. C. art. 2315.1 and 2315.2.
[34] *Id.*
[35] Rec. Doc. No. 47, p. 3.
[36] Plaintiffs further argue that Christa Carter, Terrance Carter's sister, is a proper plaintiff for the wrongful death claim because she "is Ms. Irma Jean Carter's mandatary and has all legal rights to sue on her behalf." (Rec. Doc. No. 52, p. 4.). The Court fails to see why mandate is at issue when Irma Jean Carter is a party to this lawsuit in her own right. Plaintiffs' "mandatary" argument cannot prevent Christa Carter's wrongful death claim from being dismissed.
49676

2. <u>42 U.S.C. § 1983 Claims</u>

**a. Standing Under 42 U.S.C. §1983**

Plaintiffs bring their First, Second, and Fourth Causes of Action[37] under 42 U.S.C. §1983, which provides a civil cause of action for the deprivation of certain rights. The United States Court of Appeals for the Fifth Circuit has held that "[s]tanding under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits."[38] Therefore, a party must have standing under the relevant state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988.[39] As discussed above, Plaintiff's mother, Irma Jean Carter, is the only Plaintiff with standing under Louisiana's wrongful death and survival statutes. Therefore, she is the only proper party for a claim brought under 42 U.S.C. §1983.

Despite the clear law and jurisprudence on the issue, Plaintiffs insist that the siblings of Terrance Carter have standing for their wrongful death claim because "courts have recognized a Fourteenth Amendment right and injury of a family member that exists separate and apart from the primary violation of the decedent's rights."[40] Specifically, Plaintiffs cite the 1992 Fifth Circuit case *Rhyne v. Henderson County*.[41] In *Rhyne*, the mother of a man who committed suicide in a Texas jail sued under § 1983, seeking, among other things, "to recover for her own injuries arising out of the wrongful death of

---

[37] Rec. Doc. No. 47, p. 17 and p. 23.
[38] *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004).
[39] *See Rhyne v. Henderson County,* 973 F.2d 386, 390–91 (5th Cir.1992).
[40] Rec. Doc. No. 52, p. 14.
[41] Rhyne, 973 F.2d 386 (5th Cir. 1992).
49676

her son."[42] The Fifth Circuit noted that the right to such recovery under § 1983 was an unsettled issue, but went on to find that the decedent's mother had standing to recover for her own injuries because "[t]here [was] no dispute that [the plaintiff] is within the class of people entitled to recover under Texas law for the wrongful death of a child."[43]

Plaintiffs in the instant case are mistaken in their belief that *Rhyne* creates a blanket right for family members to recover under §1983. In fact, *Rhyne* demonstrates that the right to recover for one's own injuries is derivative of the right to pursue a wrongful death action under state law. Since, as discussed above, only Terrance Carter's mother has standing under Louisiana's wrongful death statutes, the right to recover under § 1983 is likewise restricted to his mother. Indeed, Plaintiffs at times appear to concede as much. They state in their *Opposition to Defendants' Motion to Dismiss* that "[Terrance Carter's] mother, Irma Jean Carter, may bring Mr. Carter's surviving claims for Defendants' violations of his constitutional rights and section 1983,"[44] pleading no facts that would support the existence of standing on the part of the siblings.

Plaintiffs further argue that Terrance Carter's § 1983 claim "survives his death and is transferred to his estate."[45] Although it is true that a succession administrator has procedural capacity to bring certain types of suits on behalf of a decedent, Plaintiffs have not alleged that any of the parties herein is the succession administrator. Moreover, as the Fifth Circuit recently noted in *Walker v. New Orleans City*,[46] "[a] succession

---

[42] *Id.* at 390.
[43] *Id.* at 391.
[44] Rec. Doc. No. 52, p. 6.
[45] Rec. Doc. No. 52, p. 5.
[46] 709 Fed.Appx. 303 (5th Cir. 2018).
49676

administrator has no standing to bring a wrongful death claim under Louisiana law,"[47] and, as such, would not have standing to bring a § 1983 claim predicated on a wrongful death claim. Thus, the notion that anyone except Irma Jean Carter has standing under § 1983 because they somehow represent "the estate" is not persuasive.

Accordingly, the Court shall grant the *Motion to Dismiss* as to the following claims of Christa Carter and the five unnamed siblings of Terrance Carter: the "First Cause of Action," entitled "Section 1983 – Violation of Eighth Amendment,"[48] the "Second Cause of Action," entitled "Section 1983 – Violation of Eighth and Fourteenth Amendment,"[49] and the "Fourth Cause of Action," entitled "Section 1983 – Violation of Fourteenth Amendment."[50] The *Motion to Dismiss* as to Irma Jean Carter is DENIED and those causes of action may proceed with Irma Jean Carter as Plaintiff.

### b. Official Capacity Claims Under § 1983

A suit against a state official or employee in his or her official capacity is actually a suit against the state itself.[51] The Eleventh Amendment bars a state's citizens from filing suit against the state in federal court unless the state has waived its immunity.[52] Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court.[53] Thus, Plaintiff's claims against Defendants in their official capacities as employees of the state Department of Corrections are barred by the Eleventh Amendment.

---

[47] *Id.* at 304.
[48] Rec. Doc. No. 47, p. 17.
[49] *Id.*
[50] Rec. Doc. No. 47, p. 23.
[51] *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).
[52] *See Cozzo v. Tangipahoa Parish Council–President Government*, 279 F.3d 273, 280 (5th Cir. 2002).
[53] *See* La. R. S. § 13:5106(A).
49676

The doctrine of sovereign immunity does permit an exception when it comes to prospective injunctive relief: "Under *Ex Parte Young*, a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law."[54] Therefore, Plaintiff's official capacity claims for prospective relief are not barred by sovereign immunity; nonetheless, Plaintiff lacks standing to bring a claim for prospective injunctive relief.[55] Claims for prospective injunctive relief are subject to the standing requirements articulated by the United States Supreme Court in *City of Los Angeles v. Lyons*.[56] Therein, the Court held that a plaintiff seeking to enjoin the Los Angeles Police Department from the use of chokeholds lacked standing because he failed to show that he was "likely to suffer future injury from the use of the chokeholds by police officers."[57] The Court further stated that "[p]ast exposure to illegal conduct" cannot suffice to create standing "if unaccompanied by any continuing, present adverse effects."[58]

Defendants argue that Plaintiff cannot allege any continuing, present adverse effects because her claim is brought on behalf of Terrance Carter, who is deceased, and the Plaintiff herself is not incarcerated at LSP or likely to suffer future injury from any actions taken by Defendants at LSP. As Defendants note, the Fifth Circuit in *Plumley v. Landmark Chevrolet*[59] granted a motion to dismiss on similar facts, namely, where the

---

[54] *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citation omitted).
[55] Plaintiffs pray for injunctive relief, specifically, "permanent injunctive relief enjoining Defendants. . .from violating" the Eighth and Fourteenth Amendments to the Constitution and the Americans with Disabilities Act. Additionally, Plaintiffs seek injunctive relief in the form of a court order "requiring Defendants to present a plan to the Court within 60 days that provides for" certain specified reforms at LSP. (Rec. Doc. No. 47).
[56] 461 U.S. 95 (1983).
[57] *Id.* at 105.
[58] *Id.*
[59] 122 F.3d 308 (5th Cir. 1997).
49676

original plaintiff died, and a family member was substituted as plaintiff to pursue the lawsuit on his behalf. The Fifth Circuit held that the family member lacked standing to bring a claim for injunctive relief under the Americans with Disabilities Act because the plaintiff was dead and thus, "[i]t [was] unlikely that [the defendant] will wrong [the plaintiff] again."[60] Similarly, the Eastern District of Texas in *Smith v. Stephens*[61] held that the plaintiff, a former inmate of the Texas Department of Criminal Justice, lacked standing to bring a claim for prospective injunctive relief against that agency after he was transferred to the custody of another agency, the Federal Bureau of Prisons. The Texas court reasoned that injunctive relief, even if granted, would not redress the plaintiff's injury because he was no longer in the custody of the agency he was seeking to enjoin.[62]

Likewise, with respect to the instant case, Terrance Carter is no longer an inmate at LSP. His mother, who brings this action on his behalf, is not an inmate at LSP, and she pleads no facts suggesting that she faces a "real and immediate" threat of future injury. As such, Plaintiff lacks standing to seek prospective injunctive relief regarding the conditions at LSP, and her claims for prospective injunctive relief against Defendants in their official capacities are hereby dismissed.

That does not end the inquiry, however. In addition to injunctive relief, Plaintiff also prays for "a declaration that Defendants' policies and procedures, or lack thereof . . . violates the Eighth and Fourteenth Amendments to the United States Constitution."[63] The Fifth Circuit has held that the *Ex parte Young* exception to sovereign immunity can allow

---

[60] *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997).
[61] No. 9:14CV64, 2016 WL 11212419 (E.D. Tex. Sept. 29, 2016), report and recommendation adopted, No. 9:14CV64, 2017 WL 3404797 (E.D. Tex. Aug. 8, 2017).
[62] *Id.* at *3.
[63] Rec. Doc. No. 47, p. 27.
49676

for official capacity claims seeking declaratory relief.[64] Nevertheless, the Fifth Circuit has also imposed the "future injury" requirement that applies to injunctive relief on plaintiffs seeking declaratory relief. In *Bauer v. Texas*,[65] the court held that "[i]n order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that [s]he will suffer injury in the future."[66] As discussed above, Plaintiff herein has failed to allege facts that demonstrate any likelihood that she will suffer injury in the future that the declaratory relief she seeks would redress. Accordingly, her official capacity claims for declaratory relief cannot survive this motion to dismiss and will be dismissed with prejudice.

Plaintiff Irma Jean Carter also seeks "monetary relief."[67] Defendants argue that any claim for money damages against them in their official capacities is subject to dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen as "persons" within the meaning of § 1983.[68] In addition, in *Hafer v. Melo*,[69] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and

---

[64] A final prerequisite of *Ex parte Young* is that "the relief sought must be declaratory or injunctive in nature and prospective in effect." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015), quoting *Saltz v. Tenn. Dep't of Emp't Sec.,* 976 F.2d 966, 968 (5th Cir.1992).

[65] 341 F.3d 352 (5th Cir. 2003).

[66] *Id.* at 358.

[67] Rec. Doc. No. 52, p. 13 ("In addition to monetary relief, Plaintiffs have requested declaratory and injunctive relief.").

[68] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

[69] 502 U.S. 21 (1991).

49676

made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[70] Accordingly, to the extent that Plaintiff asserts § 1983 claims for monetary damages against Defendants in their official capacities, those claims are dismissed with prejudice. The Court dismissed Plaintiff's official capacity claims for injunctive and declaratory relief above. Accordingly, since none of the prayed-for relief is available to Plaintiff as a matter of law, the *Motion to Dismiss* is granted and Plaintiff's official capacity claims under § 1983 are hereby dismissed with prejudice in their entirety.

### c.  Individual Capacity Claims under § 1983

To successfully allege constitutional violations in a § 1983 claim, the Fifth Circuit has held that a plaintiff "must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims."[71] In order to establish the personal liability of a certain defendant to a plaintiff who is claiming damages for deprivation of his civil rights, that plaintiff must show that particular defendant's action or inaction was a violation of the plaintiff's civil rights.[72] Overall, "[p]ersonal involvement is an essential element of a civil rights cause of action."[73] "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[74] A supervisory official may be held liable under section 1983 only if "(1) he affirmatively

---

[70] *Id.* at 25.

[71] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (internal citations omitted).

[72] *Archie v. LeBlanc*, No. CV08-CV-1381, 2010 WL 3522296, at *4 (W.D. La. July 28, 2010), report and recommendation adopted, No. 08-CV-1381, 2010 WL 3522293 (W.D. La. Sept. 2, 2010), aff'd, 447 F. App'x 591 (5th Cir. 2011) (citing *Reimer v. Smith*, 663 F.2d 1316, 1322 n. 4 (5th Cir.1981). Also, *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 1098 n. 7, 89 L.Ed.2d 271 (1986)).

[73] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.1 983).

[74] *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).

49676

participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[75]

The Court will now address the specific allegations against each Defendant in turn.

### 1. *Secretary James LeBlanc*

Plaintiff states that LeBlanc "is the present Secretary of the Department of Corrections, a position he has held since 2012."[76] As the head of the Louisiana Department of Corrections, Secretary LeBlanc is a "supervisory official" under the doctrine. As discussed above, a supervisory official can be liable in his individual capacity under § 1983 if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[77] Plaintiff does not allege that LeBlanc affirmatively participated in the acts described in the *Complaint*. Instead, she alleges facts consistent with the second prong, with respect to policy. The Fifth Circuit has held that "[s]upervisory liability may also exist without overt personal participation in the offensive act if the supervisory official 'implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'"[78]

Plaintiff alleges that Secretary LeBlanc "is responsible for drafting and promulgating the administrative procedures under which all prisons in Louisiana, including the Louisiana State Penitentiary, are required to operate."[79] The policy that

---

[75] *Gates v. Tex. Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 435 (5th Cir. 2008).
[76] Rec. Doc. No. 47, p. 3.
[77] *Gates v. Tex. Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 435 (5th Cir.2008).
[78] *Walker v. Nunn*, 456 F. App'x 419, 424 (5th Cir. 2011), citing *Thompkins*, 828 F.2d at 304 (internal quotation marks and citation omitted).
[79] Rec. Doc. No. 47, p. 13.
49676

allegedly played a role in Terrance Carter's death is described by Plaintiff as "the institutional policy of housing mentally ill inmates and inmates in acute mental distress in Camp J."[80] Plaintiff describes the disciplinary process for placing an inmate in Camp J[81] and alleges that the process fails to offer "any safeguard or provision addressing the needs of inmates with mental health issues, diagnosed disorders, or in acute mental distress."[82] Per Plaintiff, the disciplinary process, as codified by Secretary LeBlanc in Title 22, fails to consider the mental health status of inmates or their rights under the Americans with Disabilities Act.[83]

Plaintiff further offers the general allegation that Secretary LeBlanc "drafted, authorized, condoned, and/or knowingly acquiesced to" certain policies in force at LSP that allegedly had the effect of, in short, contributing to Terrance Carter's suicide. This Court has previously held that allegations of "'tacit approval of, acquiescence in, or purposeful disregard of, rights-violating conduct' will defeat a motion to dismiss predicated on Rule 12(b)(6)."[84] However, such allegations must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[85] Throughout her *Complaint*, Plaintiff repeats the same allegation – that an individual "drafted, authorized, condoned, and/or knowingly acquiesced to the unconstitutional policy of housing mentally ill inmates and inmates in severe mental distress in Camp J"[86] -- with respect to various Defendants. Such a general, conclusory,

---

[80] Rec. Doc. No. 47, p. 3.
[81] See Rec. Doc. No. 47, p. 13-14.
[82] Rec. Doc. No. 47, p. 15.
[83] Rec. Doc. No. 47, pp. 13-14 at ¶ 51.
[84] *Cleveland v. Gautreaux*, 198 F.Supp.3d 717, 739 (M.D. La. 2016).
[85] *Iqbal*, 556 U.S. 662 (2009).
[86] *See*, e.g., Rec. Doc. No. 47 ¶ 11, 12, 13, 14, 15.
49676

and repetitive allegation is insufficient unless supported by additional specific factual allegations.

Throughout, Plaintiff asserts that all Defendants, including Secretary LeBlanc, "knew or should have known" of certain information or risks pertaining to Terrance Carter, without specifying how each Defendant was in a position to know that information or otherwise offering facts that would take the allegations beyond the realm of "sheer possibility."[87] *Twombly* instructs that a formulaic recitation of the elements of a cause of action is not enough to survive a motion to dismiss.[88] Therefore, the Court concludes that these "knew or should have known" allegations against all Defendants are insufficient to show that Secretary LeBlanc engaged in tacit approval, acquiescence, or purposeful disregard of the allegedly rights-violating policy at issue here.

More specifically, Plaintiff alleges that Department of Corrections policy calls for disciplinary sentences to be imposed by a Disciplinary Board composed of "two people . . . each representing a different discipline (security, administration, or treatment)."[89] In reality, however, Plaintiff contends, "the common practice at the prison is to comprise the Board almost exclusively of members from security and administration."[90] The *Complaint* lacks any factual basis for the allegation that Secretary LeBlanc implemented, or was even aware of, the "common practice[s]" of the LSP Disciplinary Board. If anything, by showing that the prison policy for which Leblanc "is responsible" on its face *includes* treatment personnel in disciplinary decisions, Plaintiff fails to state a claim that the

---

[87] *Twombly*, 550 U.S. at 570 (2007).
[88] *Twombly* at 555 (internal citations and brackets omitted).
[89] Rec. Doc. No. 47, p. 14.
[90] Rec. Doc. No. 47, p. 14.
49676

challenged policy is "so deficient that the policy itself is a repudiation of constitutional rights."[91]

In *Archie v. LeBlanc*,[92] the Western District of Louisiana granted Secretary LeBlanc's motion to dismiss in a case where a prisoner "allege[d] in his complaint that his constitutional rights were violated when he was incarcerated . . . because he was subjected to unconstitutional conditions of confinement."[93] The Western District found that these generalized allegations were not enough to state a claim against LeBlanc in his individual capacity, because the plaintiff did not "allege[] or offer[] any specific facts or proof of any act or omission by LeBlanc which constituted a violation of [the plaintiff's] civil rights."[94] The same is true here.

Moreover, the Fifth Circuit has noted an important caveat to supervisory liability claims brought based on an allegedly deficient policy: the "[e]xistence of a constitutionally deficient policy cannot be inferred from a single wrongful act."[95] To demonstrate that the violations at Camp J were not limited to a single act, Plaintiff avers that "another inmate at Camp J also took his life"[96] on the day of Carter's suicide, and that, "on information and belief . . . at least four other inmates at Camp J have taken their own lives"[97] since then. However, Plaintiff's allegations surround "the unconstitutional policy of housing mentally

---

[91] *Walker v. Nunn,* 456 F. App'x 419, 424 (5th Cir. 2011), citing *Thompkins*, 828 F.2d at 304 (internal quotation marks and citation omitted).
[92] No. CV08-CV-1381, 2010 WL 3522296, at *1 (W.D. La. July 28, 2010), report and recommendation adopted, No. 08-CV-1381, 2010 WL 3522293 (W.D. La. Sept. 2, 2010), aff'd, 447 F. App'x 591 (5th Cir. 2011).
[93] *Id.* at *4.
[94] *Id.* at *1.
[95] *Brown v. Bolin,* 500 Fed.Appx. 309, 314 (5th Cir.2012).
[96] Rec. Doc. No. 47, p. 12.
[97] *Id.*
49676

ill inmates and inmates in acute mental distress in Camp J,"[98] and she does not allege that these five other inmates who allegedly committed suicide at Camp J were mentally ill. Though undoubtedly tragic, the five other suicides do not provide factual support for Plaintiff's allegation that Secretary LeBlanc's policy with respect to mentally ill inmates was constitutionally deficient. As such, the allegations in the *Complaint* only state a claim as to Carter. Even accepting as true that his suicide was caused by the allegedly deficient policy, Plaintiff has successfully pled only a "single wrongful act."

Other allegations also suggest that the alleged violation was unique to Carter. Plaintiff avers that although Carter was sentenced to 6 months at Camp J, "other inmates with similar infractions are given only a few days to a few weeks at Camp J."[99] In *Thompkins v. Belt*, the Fifth Circuit concluded that there was no basis for finding supervisory liability where the record "indicate[d] no more than that the system may have failed in the one particular instance."[100] Carter's allegedly disproportionate sentence stands as "one particular instance" in contrast with the sentences allegedly given to other similarly situated inmates. Because the Fifth Circuit has clearly held that a single instance of wrongful conduct cannot support a claim for supervisory liability on the basis of deficient policy, the Court finds that Defendants' *Motion to Dismiss* shall be granted as to the claims against Secretary LeBlanc in his individual capacity.

### 2. *Warden Burl Cain*

Plaintiff asserts various claims against former LSP Warden N. Burl Cain in his individual capacity. But the pleaded allegations pertaining to Warden Cain are limited to

---

[98] Rec. Doc. No. 47, p. 4.
[99] Rec. Doc. No. 47, p. 10.
[100] *Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987).
49676

the unelaborated assertion that "[o]n information and belief," Warden Cain and several others "assisted Defendant LeBlanc and the Department of Corrections in drafting and promulgating the administrative procedures at issue during all times relevant to this complaint."[101] Even accepting that allegation as true, the Court concluded above that Plaintiff did not successfully plead that the policy was so constitutionally deficient as to give rise to supervisory liability. As such, Cain's alleged involvement in the creation of the policy does not suffice to state a claim for his individual liability.

Moreover, Plaintiff's own account of Warden Cain's tenure at LSP highlights that he resigned "in December 2015"[102] and was thus not employed there when Terrance Carter was sent to the disciplinary housing unit at Camp J in February 2016, nor during the subsequent events leading up to his death in April 2016. For these reasons, the Court finds that Defendants' *Motion to Dismiss* shall be granted as to the claims against Warden Burl Cain in his individual capacity.

### 3. *Warden Darryl Vannoy*

Plaintiff alleges that Warden Vannoy was employed at LSP during the relevant timeframe in the first half of 2016.[103] Additionally, Plaintiff asserts that Warden Vannoy "overs[aw] the operations, staffing, and administration of the prison, including the operations, staffing, and administration of Camp J,"[104] where Terrance Carter was housed before his death. Although they successfully establish that Warden Vannoy was present at LSP during the relevant timeframe and had some degree of power and control over the

---

[101] Rec. Doc. No. 47, p. 13.
[102] Rec. Doc. No. 47, p. 4.
[103] Rec. Doc. No. 47, p. 4 ("was the interim Warden from January 2016 until his appointment as Warden [in July 2016])".
[104] Rec. Doc. No. 47, p. 4.
49676

operations there, Plaintiff does not bring forth any factual allegations that demonstrate *personal involvement* by Warden Vannoy, nor does she cite any specific action or inaction taken by Warden Vannoy as having been a contributing cause to the violation of Terrance Carter's rights. To be liable under § 1983, a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to be redressed.[105] Because Plaintiff fails to allege any specific actions taken by Warden Vannoy, the *Complaint* fails to state a claim that Vannoy deprived Terrance Carter of constitutional rights. Plaintiff generally describes the disciplinary procedure in place at LSP, including the involvement of the "Disciplinary Board,"[106] but does not allege that Warden Vannoy or any other named Defendant was a member of that Board. Plaintiff fails to plead any facts that Warden Vannoy implemented allegedly unconstitutional policies. Therefore, the Court concludes that Defendants' *Motion to Dismiss* shall be granted with respect to the claims against Warden Vannoy in his individual capacity.

### 4. *Deputy Warden Leslie Dupont and Assistant Warden James "Jimmy" Cruze*

Plaintiff asserts that "during times relevant to this Complaint, [Dupont] was the Deputy Warden in charge of Security"[107] at LSP, while Cruze was "in charge of Death Row, Security, and Camp J."[108] Both men, Plaintiff claims, "[were] aware, or should have been aware, of Terrance Carter's mental health issues and acute mental distress."[109]

---

[105] *Barnes v. Bond*, No. CIV.A.07-789JVP-SCR, 2008 WL 3887657, at *4 (M.D. La. Aug. 21, 2008) (citing *Lozano v. Smith*, 718 F.2d 756 (5th Cir.1983)).
[106] Rec. Doc. No. 47, p. 14.
[107] Rec. Doc. No. 47, p. 4.
[108] Rec. Doc. No. 47, p. 5.
[109] Rec. Doc. No. 47, p. 5.
49676

Absent factual detail, this claim cannot survive a motion to dismiss. Even accepting as true that Dupont and Cruze had duties related to "security" and/or Camp J, that alone is not sufficient to state a claim that they participated in constitutional violations. As to Deputy Warden Dupont, Plaintiff avers that "[o]n information and belief . . . [he] assisted Defendant LeBlanc and the Department of Corrections in drafting and promulgating the administrative procedures at issue."[110] For the same reasons set forth as to Warden Burl Cain, that allegation is insufficient to state a claim. Moreover, the plausibility of that assertion is undermined by Plaintiff's claim elsewhere in the *Complaint* that Secretary LeBlanc "is responsible"[111] for the drafting and promulgation of administrative procedures. Although detailed factual allegations are not necessary to survive a motion to dismiss, such general and formulaic allegations as the ones made against Dupont and Cruze cannot suffice. Therefore, the Court finds that the *Motion to Dismiss* shall be granted with respect to the claims against Deputy Warden Leslie Dupont and Assistant Warden James "Jimmy" Cruze in their individual capacities.

### 5. *Assistant Wardens Barrett Boeker and Jonathon London*

Assistant Wardens Boeker and London are each alleged to have been "the Assistant Warden in charge of Camp J."[112] Likewise, each man is alleged to have been "aware, or should have been aware, of Terrance Carter's mental health issues and acute mental distress."[113] This conclusory assertion is unaccompanied by any factual allegations that demonstrate personal involvement or any specific action or inaction taken

---

[110] Rec. Doc. No. 47, p. 13.
[111] Rec. Doc. No. 47, p. 13.
[112] Rec. Doc. No. 47, p. 5.
[113] Rec. Doc. No. 47, p. 5.
49676

by Defendants Boeker and London. The Court finds that merely having been employed in Camp J during the relevant timeframe is not sufficient to give rise to the inference that Boeker or London was involved in a constitutional violation. As such, the *Motion to Dismiss* shall be granted as to Assistant Wardens Barrett Boeker and Jonathan London in their individual capacities. Having examined Plaintiff's individual capacity claims under § 1983 for their compliance with the Rule 12 standard, the Court concludes that none of the individual capacity claims can survive a motion to dismiss as pleaded. Accordingly, the *Motion to Dismiss* Plaintiff's individual capacity § 1983 claims as to all Defendants is granted and the claims are hereby dismissed with prejudice.

### d. Deliberate Medical Indifference Under § 1983

Plaintiff also appears to assert a claim for deliberately indifferent medical treatment under Section 1983, alleging that Defendants' "failure to treat Mr. Carter or address his mental health issues was cruel, unusual, and deliberately indifferent to his medical needs."[114] Terrance Carter's time at LSP was, per Plaintiff, marked by "the denial of appropriate treatment, medication, and mental health services."[115] Moreover, Carter's sentence to Camp J came with an "obvious risk of harm"[116] because it had the effect of "restricting his access to medical care."[117] Carter allegedly told his attorney that "the prison would not put him on suicide watch"[118] despite his repeated requests.

To prevail on an Eighth Amendment claim for the deprivation of medical care, a plaintiff must allege and show that appropriate care has been denied and that the denial

---

[114] Rec. Doc. No. 47, p. 15.
[115] Rec. Doc. No. 47, p. 16.
[116] *Id.*
[117] *Id.*
[118] Rec. Doc. No. 47, p. 2.
49676

has constituted "deliberate indifference to serious medical needs."[119] Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue, because a prisoner's mere disagreement with his medical treatment, absent exceptional circumstances, does not support a claim of deliberate medical indifference.[120] Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.[121] Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.[122] A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it."[123]

The deliberate indifference standard sets a very high bar. Plaintiff Irma Jean Carter must allege that prison officials "refused to treat [her son], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[124] Based on the allegations in her *Complaint*, Plaintiff has not cleared that high bar.

The allegations in the *Complaint*, accepted as true, show that Terrance Carter did receive some level of medical care during his time at LSP. For example, Plaintiff alleges that Carter "was frequently in contact with the medical and mental health professionals at the prison,"[125] and that when Carter's appellate lawyer "made the prison aware of Carter's

---

[119] *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014), citing *Estelle v. Gamble*, 429 U.S. 97 (1976).
[120] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).
[121] *See Zaunbrecher v. Gaudin*, 641 F. App'x 340, 342 (5th Cir. 2016).
[122] *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994).
[123] *Gobert* at 346, quoting *Farmer v. Brennan* at 847.
[124] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), quoting *Estelle v. Gamble*, supra.
[125] Rec. Doc. No. 47, p. 9.
49676

complaints," the prison medical staff examined him and 'were unable to find anything physically wrong."[126] Later, a doctor at the prison told Carter's attorney that he "thought Mr. Carter was having olfactory hallucinations, and that he referred Mr. Carter to mental health services."[127]

Plaintiff also alleges that Terrance Carter "requested to be put on suicide watch"[128] and that prison officials refused that request. Plaintiff fails to name or specify any official who received, or refused, Carter's request. Moreover, elsewhere in her *Complaint*, Plaintiff describes a letter written from Terrance Carter to his appellate lawyer where Carter stated: "The Sergeant claimed the reason I'm being watched is because I'm on suicide watch. I was unaware of that. . ."[129] So, the allegations in the *Complaint* potentially show that Carter was, in fact, on suicide watch. The generality of the allegation, and the presence of conflicting allegations, cannot suffice to state a claim that Defendants, generally, were deliberately indifferent.

The Fifth Circuit has noted that, "'while ... the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the suicide risk, we cannot say that the law is established with any clarity as to what those measures must be.' "[130] What is clear is that, even if an officer responds without the due care a reasonable person would use—such that the officer is only negligent—there will be no liability.[131] Here, Plaintiff fails to identify specific officers or doctors who were involved in the allegedly

---

[126] Rec. Doc. No. 47, p. 9.
[127] Rec. Doc. No. 47, p. 9.
[128] Rec. Doc. No. 47, p. 2.
[129] Rec. Doc. No. 47, p. 2.
[130] *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 394–95 (5th Cir. 2000), citing *Hare III*, 135 F.3d at 328–29 (quoting *Rellergert v. Cape Girardeau County*, 924 F.2d 794, 797 (8th Cir.1991)).
[131] *Hyatt v. Thomas*, 843 F.3d 172, 178 (5th Cir. 2016), citing *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).
49676

indifferent medical treatment, much less set forth a factual basis for their deliberate indifference. Accordingly, in the absence of any factual content upon which the Court can infer liability, Defendants' *Motion to Dismiss* is granted as to the § 1983 claim for deliberate medical indifference.

### 3. Plaintiffs' Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") Claims

#### a. Standing under the ADA and RA

Defendants argue that Plaintiffs lack standing to bring an ADA claim since they "have not and cannot allege that they suffered an injury in fact" and their "allegations concern only [Terrance] Carter."[132] Plaintiffs object, citing two Texas district court cases for the proposition that "the ADA and RA have much broader standing provisions"[133] that permit them to advance their ADA claim. Although the issue of who has standing to bring an ADA claim on behalf of a deceased person has been the subject of some disagreement at the district court level,[134] the Fifth Circuit has held that the "survivability" of ADA claims is to be evaluated with reference to the relevant body of state law.[135] Thus, as it did above in its analysis of Plaintiffs' wrongful death claim, the Court applies Louisiana law and concludes that Irma Jean Carter is the only proper plaintiff for the ADA claim brought on behalf of Terrance Carter. The *Motion to Dismiss* the ADA claims of Christa Carter and

---

[132] Rec. Doc. No. 48-1, p. 6.
[133] Rec. Doc. No. 52, p. 11.
[134] *See*, e.g., *Cardella v. CVS Caremark Corp.*, No. CIV.A. 308-CV-1656-M, 2010 WL 1141393, at *1, n. 7 (N.D. Tex. Mar. 25, 2010).
[135] *See Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 161 (5th Cir. 2016) (citing *Hutchinson on Behalf of Baker v. Spink*, 126 F.3d 895, 898 (7th Cir. 1997)) ("We may consider that common law rule in determining who may assert a claim for a minor's compensatory damages under the ADA or Rehabilitation Act, just as other courts have looked to the common law to determine when federal civil rights claims survive the death of the person aggrieved.").
49676

the other, unnamed siblings is granted and the claims are dismissed with prejudice for lack of standing.

### b. Stating a Claim Under the ADA and RA[136]

In order to establish a violation of the ADA, Plaintiff Irma Jean Carter must be able to demonstrate: (1) that Terrance Carter was a qualified individual within the meaning of the Act, (2) that he was excluded from participation in or denied the benefits of services, programs, or activities for which the defendants were responsible, or was otherwise discriminated against by the defendants, and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability.[137] Here, based on the allegations in Plaintiff's *Complaint*, every element of this cause of action can be found.

As to the first prong, Plaintiff alleges that Terrance Carter suffered from "mental illness, psychosis, paranoia, acute anxiety, [and] hallucinations," and that he "was at high risk of suicide."[138] A qualified disability under the ADA is one that substantially limits an individual's ability to engage in "major life activities." The Fifth Circuit has described "major life activities" as "'those activities that are of central importance to daily life'"[139] including things like "'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" Plaintiff's allegations describe how Terrance Carter's mental illness caused him debilitating anxiety and even interfered with his ability

---

[136] Section 504 of the Rehabilitation Act protects qualified individuals from discrimination on the basis of disability by entities receiving financial assistance from any federal department or agency. 29 U.S.C. § 794 et seq. Passed in 1973, the ADA expanded upon its protections. The same prima facie case can be made by a disabled plaintiff under both acts (*Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir.1999)). Courts "examine cases construing claims under the ADA, as well as [S]ection 504 of the Rehabilitation Act, because there is no significant difference in the analysis of rights and obligations created by the two Acts," *Vinson v. Thomas*, 288 F.3d 1145, 1152 n. 7 (9th Cir.2002).
[137] *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir.1997).
[138] Rec. Doc. No. 47, p. 22.
[139] *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011).
49676

to perceive reality. Finding these allegations satisfactorily proved, a reasonable factfinder could conclude that Carter had a "qualified disability" under the ADA.

With respect to the second prong, which requires that Plaintiff demonstrate that Carter was discriminated against by the Defendants in some way, Plaintiff alleges the following:

> Instead of accommodating Mr. Carter's needs, these Defendants and the prison denied [him] services and programs available to others, including but not limited to, access to appropriate medication, access to attorney-client and spiritual/religious visits, family contact, access to a telephone, and access to appropriate care and treatment that could have protected him from suicide and could have reduced the risk of harm and suicide.[140]

Specifically, Plaintiff alleges that Terrance Carter was sent to the disciplinary unit at Camp J after he threw urine on another inmate in February 2016.[141] Per Plaintiff, being assigned to Camp J meant that Carter was on "restricted medical status,"[142] which limited his access to the medical care that he needed. While in Camp J, Terrance Carter "repeatedly complained to the prison staff, correctional officers, Assistant Wardens and Warden" and "repeatedly requested to be put on suicide watch."[143] Plaintiff alleges that this request was ignored.[144]

The Court notes that these allegations are in some ways more consistent with a claim regarding the adequacy of the medical treatment and services provided at LSP than a claim arising under the ADA. Courts within the Fifth Circuit have held that, where the "plaintiff's core complaint [is] incompetent treatment for his underlying medical condition,

---

[140] Rec. Doc. No. 47, p. 23.
[141] Rec. Doc. No. 47, p. 10.
[142] Rec. Doc. No. 47, p. 10.
[143] Rec. Doc. No. 47, p. 10.
[144] Rec. Doc. No. 47, p. 16 at ¶ 62.
49676

[s]uch a complaint does not state a claim for relief under the ADA because '[t]he ADA does not create a remedy for medical malpractice.' "[145] However, as this Court noted in *Cleveland v. Gautreaux*, "a contrary principle controls in accommodations cases: in case after case, the Fifth Circuit has held that a defendant's failure to make the reasonable modifications necessary to adjust for the unique needs of disabled persons can constitute intentional discrimination under the ADA."[146]

Plaintiff's attempt to plead discrimination finds stronger footing with the allegation that Carter was sentenced to six months at Camp J while "other inmates with similar infractions are given only a few days to a few weeks at Camp J."[147] As to the third prong, requiring a showing that the discrimination occurred "by reason of" the alleged disability, Plaintiff alleges that Carter "believed his lengthy time at Camp J was retaliation because of his complaints about his odor problem"[148] related to his olfactory hallucinations. The Court notes that assessing the adequacy of this allegation is a uniquely challenging task, since the premise of Terrance Carter's disability as articulated by Plaintiff is that he suffered from extreme anxiety and hallucinations caused by his mistaken belief that he "smelled bad." Carter often believed that "other people were mocking him for his smell,"[149] which, per the prison medical staff, did not exist.[150] Indeed, Plaintiff avers that the "doctors who were treating [Carter]" during his time in Camp J "told him that he was hallucinating."[151] In short, it is difficult to determine the plausibility of the allegation that

---

[145] *Brown v. Wilson*, 2012 WL 6719464, *3 (N.D. Tex. Dec. 27, 2012), quoting *Moore v. Prison Health Services, Inc.*, 24 F.Supp.2d 1164, 1168 (D.Kan.1998), affirmed, 201 F.3d 448 (10th Cir. 1999).
[146] *Cleveland v. Gautreaux*, 198 F. Supp. 3d 717, 746 (M.D. La. 2016) (internal citations omitted).
[147] Rec. Doc. No. 47, p. 10.
[148] Rec. Doc. No. 47, p. 10.
[149] Rec. Doc. No. 47, p. 9.
[150] Rec. Doc. No. 47, p. 9 ("unable to find anything physically wrong").
[151] Rec. Doc. No. 47, p. 10.
49676

Carter was targeted by virtue of his disability, since suspecting that he was being targeted for his disability was, apparently, a *symptom* of that disability. Nevertheless, Rule 12 requires that the Court view this allegation in the light most favorable to the plaintiff. Therefore, the Court finds that Plaintiff's allegations, if found true, would set forth a cognizable claim for discrimination under the ADA.

### 4. Prescription

Defendants contend that Plaintiff's claims are prescribed because the applicable prescriptive period is one year, and Plaintiff filed this lawsuit on March 31, 2017, more than a year after most of the conduct alleged in their *Complaint* occurred.[152] Plaintiff does not dispute that one year is the applicable prescriptive period. However, she maintains that she have pleaded facts "sufficient to plead tolling of the prescriptive period and/or the application of the continuing violation doctrine."[153] Moreover, Plaintiff argues that "the constitutional violations Mr. Carter suffered continued until and through the day of his death on April 2, 2016," which date is less than one year before they filed suit and thus not outside the prescriptive period. The Court agrees on both counts. First, Plaintiff's *Amended Complaint* contains factual allegations that could support the application of a "tolling" doctrine. For example, Plaintiff alleges that Terrance Carter experienced hallucinations that plausibly could have prevented him from becoming aware that he had a legal cause of action.[154]

---

[152] Rec. Doc. No. 48-1, pp. 8-9.
[153] Rec. Doc. No. 52, p. 8.
[154] *See*, *e.g.*, Rec. Doc. No. 47, p. 11 (wherein during a visit from a representative of Plaintiffs' counsel, Terrance Carter "expressed that everyone was watching him, that his smell was still bad, and that people on the tier, including the guards, were bullying him and messing with him").
49676

Additionally, the Court agrees that the civil rights violations alleged by Plaintiff plausibly continued until Terrance Carter's death on April 2, 2016. Defendants conclusorily assert that any claim that arose before March 31, 2016 is prescribed, without explaining why April 1 and April 2, 2016 should not be considered for purposes of the prescription analysis. Those dates are within the one-year prescriptive period, and the violations alleged by Plaintiff are specifically described as occurring "at all times herein,"[155] up to Carter's suicide on April 2, 2016.

Defendants urge this Court to follow the Fifth Circuit's ruling in *Brockman v. Texas Dept. of Criminal Justice*,[156] where it concluded that a mother's claims related to her bipolar son's suicide in jail were time-barred because her son "should have known the quality of the treatment he was receiving for his bipolar disorder"[157] and was thus aware of his claim more than two years (the applicable statute of limitations in Texas) before the suit was filed. The Court finds *Brockman* inapposite here. The plaintiff in *Brockman* waited until her appeal to raise the argument that her son's bipolar disorder might have precluded him from becoming aware of his cause of action. Thus, the Fifth Circuit concluded that the so-called "unsound minds" tolling argument was waived. Because Plaintiffs herein have successfully raised a tolling argument here, at the district level, there is no such issue of waiver. Moreover, the appellate record in *Brockman* contains no mention that plaintiff argued for the application of the continuing violation doctrine, as Plaintiffs herein have done. Overall, the Court declines to find that this action is prescribed on the face of the complaint.

---

[155] *See* Rec. Doc. No. 47, pp. 15-16, ¶ 55 – 61.
[156] 397 F. App'x 18, 22 (5th Cir. 2010).
[157] *Id.* at *3.

49676

## III. CONCLUSION

For the reasons set forth above, Defendants' *Motion to Dismiss*[158] is granted in part and denied in part.

    a. The *Motion to Dismiss* the claims brought under 42 U.S.C. § 1983[159] is GRANTED, and those claims are dismissed with prejudice.

    b. The *Motion to Dismiss* the wrongful death and ADA/RA claims of Christa Carter and Plaintiffs named "Does 1-5" is hereby GRANTED, and those claims are dismissed with prejudice for lack of standing. The *Motion to Dismiss* Irma Jean Carter's wrongful death claim and ADA/RA claims is hereby DENIED.[160]

    c. Plaintiffs' State Law Negligence claim[161] was not addressed in the instant *Motion to Dismiss* and remains a part of this action.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>February 21, 2019</u>.


_____

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[158] Rec. Doc. No. 48.
[159] First, Second, and Fourth Causes of Action (Rec. Doc. No. 47, pp. 17-24).
[160] Sixth and Third Causes of Action, respectively (Rec. Doc. No. 47 p. 22-24).
[161] Fifth Cause of Action, Rec. Doc. No. 47, p. 24.
49676