# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

IRMA JEAN CARTER, et al.                                          CIVIL ACTION

VERSUS                                                           17-201-SDD-RLB

N. BURL CAIN, et al.

## RULING

Before the Court is the *Motion to Dismiss and Motion to Strike Certain Allegations from Plaintiff's Second Amended Complaint*[1] filed by Defendants James LeBlanc, N. Burl Cain, Darryl Vannoy, and Leslie Dupont (collectively, "Defendants"). Plaintiff Irma Jean Carter ("Plaintiff") filed an *Opposition*,[2] to which Defendants filed a *Reply*.[3] For the reasons which follow, the *Motion* shall be GRANTED in part and DENIED in part.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2016, Terrance Carter ("Carter") was found dead in his cell at Camp J in the Louisiana State Penitentiary ("LSP"), where he was an inmate.[4] Carter's mother, sister, and other siblings subsequently brought the present lawsuit, alleging that Carter had "years of documented mental health problems"[5] and that various officials at LSP "drafted, authorized, condoned, and/or knowingly acquiesced to the unconstitutional policy of housing mentally ill inmates . . .in Camp J, referred to as disciplinary or administrative segregation."[6]

---

[1] Rec. Doc. No. 76.
[2] Rec. Doc. No. 82.
[3] Rec. Doc. No. 86.
[4] Rec. Doc. No. 4, p. 2.
[5] Rec. Doc. No. 47, p. 1.
[6] Rec. Doc. No. 4, pp. 3-4.
58462

Defendants filed a *Motion to Dismiss*,[7] which resulted in this Court ordering Plaintiffs to file an amended complaint that addressed the issue of proper parties for a wrongful death and survival action. Plaintiffs filed an *Amended Complaint*,[8] which drew a second *Motion to Dismiss*[9] from Defendants. On February 21, 2019, this Court granted that *Motion to Dismiss* in part, dismissing the claims of Carter's siblings and the § 1983 claims against Defendants in their individual and official capacities.[10] During a subsequent telephone status conference, Plaintiff asked for leave to file another amended complaint to address the pleading deficiencies noted in the *Ruling*. This Court granted that request.[11]

Plaintiff filed her *Second Amended Complaint* on April 11, 2019,[12] after which Defendants filed the instant *Motion to Dismiss and Motion to Strike Certain Allegations from Plaintiff's Second Amended Complaint*.[13] In it, Defendants argue that in her *Second Amended Complaint*, "instead of correcting the pleading deficiencies, plaintiff attempts to add new defendants and claims, essentially changing the landscape of this litigation more than two years after suit was filed and after discovery is complete."[14] Defendants argue that those newly-added Defendants and the related allegations should be stricken because their addition at this stage is "very prejudicial"[15] and exceeds the scope of the leave to amend granted by this Court. Further, Defendants argue, the *Second Amended*

---

[7] Rec. Doc. No. 24.
[8] Rec. Doc. No. 47.
[9] Rec. Doc. No. 48.
[10] *Ruling*, Rec. Doc. No. 62.
[11] Rec. Doc. No. 66.
[12] Rec. Doc. No. 72.
[13] Rec. Doc. No. 76.
[14] Rec. Doc. No. 76-1, p. 2.
[15] *Id.* at p. 4.

58462

*Complaint* still fails to adequately plead claims for supervisory liability or deliberate indifference under 42 U.S.C. § 1983 and claims under the Americans with Disabilities Act. The Court will address the parties' arguments in turn.

## II.   LAW AND ANALYSIS

### A.  <u>Motion to Strike</u>

Plaintiff's *Second Amended Complaint* names two new Defendants – Kristen Thomas ("Thomas"), alleged to be the director of Mental Health Services at LSP during the relevant time period, and Justine Worsham ("Worsham"), alleged to be the social worker at LSP who visited Terrance Carter in Camp J the day before he died.[16] Plaintiff alleges that both Thomas and Worsham were originally sued as unnamed "Doe" defendants. Defendants object to the addition of new Defendants at this stage in the litigation and argue that all of the allegations related to Thomas and Worsham should be stricken from the *Second Amended Complaint* because their identities should have been known to Plaintiff via discovery since at least 2017 and their late addition is prejudicial.

Plaintiff's *Opposition* to the *Motion to Dismiss* does not address or oppose Defendants' motion to strike the new allegations. Thus, because the *Motion to Strike* appears to be unopposed, and because the amendments exceed the scope of leave to amend granted by this Court,[17] the *Motion to Strike* shall be granted and the following allegations stricken from the *Second Amended Complaint* because they pertain directly to Thomas and Worsham: Paragraphs 17, 18, 19, 20, 21, 22, 24, 26, 27, 28, 29, 30, 55,

---

[16] Rec. Doc. No. 72.
[17] This Court granted leave to amend in order for Plaintiff to make additional allegations regarding the personal involvement of the Defendants in the events out of which this case arises. The addition of new Defendants was not contemplated by this Court's relatively narrow leave to amend.
58462

56, 57, 58, 71, 72, 73, 77, 78, 142 (as to Thomas and Worsham), 143 (as to Thomas and Worsham) and 144 (as to Thomas). Thomas and Worsham shall be terminated as parties in this matter.

### B. <u>Motions to Dismiss Under Rule 12(b)(6)</u>

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[18]  The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[19]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[20]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[21]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[22]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[18] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[19] *Randall D. Wolcott, M.D., P.A. v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011).
[20] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[21] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter "*Twombly*").
[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
58462

alleged."[23]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[24]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[25]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[26]

     1.  <u>42 U.S.C. § 1983 Claims</u>

        *a. Individual Capacity Claims under § 1983*

To successfully allege constitutional violations in a § 1983 claim, the Fifth Circuit has held that a plaintiff "must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims."[27] In order to establish the personal liability of a certain defendant to a plaintiff who is claiming damages for deprivation of his civil rights, that plaintiff must show that particular defendant's action or inaction was a violation of the plaintiff's civil rights.[28] Overall, "[p]ersonal involvement is an essential element of a civil rights cause of action."[29] "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[30] A supervisory official may be held liable under section 1983 only if "(1) he affirmatively

---

[23] *Iqbal,* 550 U.S. at 678.

[24] *Id.*

[25] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (S.D. Texas May 3, 2012)(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[26] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[27] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (internal citations omitted).

[28] *Archie v. LeBlanc*, No. CV08-CV-1381, 2010 WL 3522296, at *4 (W.D. La. July 28, 2010), report and recommendation adopted, No. 08-CV-1381, 2010 WL 3522293 (W.D. La. Sept. 2, 2010), aff'd, 447 F. App'x 591 (5th Cir. 2011) (citing *Reimer v. Smith*, 663 F.2d 1316, 1322 n. 4 (5th Cir.1981)). Also, *Malley v. Briggs*, 475 U.S. 335 (1986)).

[29] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.1983).

[30] *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).

58462

participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[31]

The Court will now address the sufficiency of the allegations against each Defendant.

1. <u>Eighth and Fourteenth Amendment Claims under § 1983</u>

a. Secretary James LeBlanc

In its *Ruling* on the previous Motion to Dismiss filed by Defendants, the Court found that Plaintiff did "not allege that LeBlanc affirmatively participated in the acts described in the *Complaint*"[32] such that supervisory liability could attach on the basis of that personal involvement in the alleged constitutional violation. Attempting to redress that deficiency, Plaintiff in her *Second Amended Complaint* alleges that Secretary LeBlanc "drafted"[33] several of the challenged policies. In her *Opposition* to the instant motion, Plaintiff argues that "Defendants cannot and do not contest their personal involvement in drafting the policies at issue."[34]

Even accepting as true the allegation that Secretary LeBlanc drafted the challenged policies, the Court finds that his "drafting" is not the type of personal involvement required under the doctrine. To succeed on an individual capacity claim for supervisory liability based on personal involvement, the doctrine requires that the official "affirmatively participates in the acts that cause the constitutional deprivation."[35] Participating in the drafting of a policy that allegedly set in motion a chain of events and

---

[31] *Gates v. Tex. Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 435 (5th Cir. 2008).
[32] Rec. Doc. No. 62, p. 14.
[33] Rec. Doc. No. 72, p. 7, p. 8.
[34] Rec. Doc. No. 82, p. 5.
[35] *Gates*, 537 F.3d at 435 (5th Cir. 2008).
58462

omissions that caused Terrance Carter's suicide is not the same as participating "in the *acts* that cause the constitutional deprivation."[36] The Court finds that the allegation of drafting a policy is too attenuated from the alleged violation in this case to support a supervisory liability claim. At its heart, Plaintiff's supervisory liability claim is rooted in the second prong of supervisory liability doctrine, which creates liability for an official who "implements unconstitutional policies that causally result in the constitutional injury."[37]

In its previous *Ruling*, the Court concluded that the policy-related allegations against Secretary LeBlanc were insufficient to survive a motion to dismiss, explaining that "general, conclusory, and repetitive allegation[s]" for individual liability based on policy "[are] insufficient unless supported by additional specific allegations."[38] In her *Second Amended* Complaint, Plaintiff offers expanded and more specific allegations regarding LeBlanc's involvement in creating constitutionally deficient policies. Now, she alleges that Secretary LeBlanc "drafted at least two constitutionally deficient Department Regulations relating to the punishment and classification of inmates,"[39] specifically, Regulations B-02-001 and B-05-001. Plaintiff contends that those regulations were deficient because they did not account for or require review of "an inmate's current mental health, acute mental distress, or history of mental illness and related medications"[40] before allowing an inmate to be placed in administrative or punitive segregation at LSP. Furthermore, Plaintiff states, neither regulation "required such an evaluation until at least 90 days after the inmate had

---

[36] *Id.* (emphasis added).
[37] *Id.*
[38] Rec. Doc. No. 62, pp. 15-16.
[39] Rec. Doc. No. 72, p. 7.
[40] *Id.*
58462

been placed in a solitary cell."[41] Plaintiff also cites two more health care policies – Numbers 27 and 36 – that were allegedly drafted by LeBlanc and also allegedly failed to take an inmate's mental health status into account before deciding to place him in solitary confinement.[42]

Plaintiff's amendments flesh out her policy-related allegations by citing specific policies. However, Defendants argue that these amendments do not cure the deficiencies raised in the Court's previous *Ruling* because, although Plaintiff cites specific policies this time, the policies cited are not so deficient that they represent "a repudiation of constitutional rights."[43] Defendants cite no law, however, in support of their conclusory statement that their challenged policies are constitutional. On this point, the Court agrees with Plaintiff that "Defendants' arguments take issue not with the sufficiency of Plaintiff's allegations, but instead with the ultimate merits of her claim. . ."[44]

Defendants also insist that none of the newly-added allegations overcome the fact that Plaintiff's claims concern only a "single wrongful act," which, the Fifth Circuit has held, is insufficient to show supervisory liability based on unconstitutional policy.[45] Indeed, in its previous *Ruling*, this Court concluded that Plaintiff's claims against Secretary LeBlanc should be dismissed because, despite some stray and general allegations attempting to allege a wider pattern or series of incidences, the *Complaint* ultimately alleged only a single wrongful act.

---

[41] *Id.*
[42] *Id.* at p. 8.
[43] Rec. Doc. No. 76-1, p. 7.
[44] Rec. Doc. No. 82, p. 5.
[45] *Brown v. Bolin*, 500 Fed. Appx. 309, 314 (5th Cir. 2012); see also *Thompkins,* 828 F.2d at 305.
58462

The *Second Amended Complaint* changes the landscape. This Court's previous holding was based on the allegations in the *Amended Complaint*, which were vague and conclusory as to which policies, exactly, allegedly caused these suicides. Now that the Plaintiff has amended her allegations to specify policies, the "single, wrongful act" argument is less persuasive. Based on Plaintiff's amendments, it is clear that the policies she cites would have applied to all inmates in Camp J, including another that, she alleges, "killed himself"[46] the same morning of Terrance Carter's suicide.

Paragraph 45 in the *Second Amended Complaint* alleges more than a "single wrongful act." In that paragraph, Plaintiff states:

> Defendant LeBlanc has stated his awareness of the increased risk to inmates for self-harm and suicide when they are placed in segregation. At deposition, he stated his hope that the Health Care Policies he drafted accounted for the mental health issues of inmates subject to isolation through disciplinary detention and segregation, but could not point to anywhere in Health Care Policy 36 that mandated such mental health screening or care.[47]

These allegations, accepted as true on this 12(b)(6) motion, provide a plausible factual support for Plaintiff's claim that there was a not just a single, wrongful act but a pattern of inadequate mental health care beyond Terrance Carter's case – a pattern of which Secretary LeBlanc was allegedly aware. "At the pleading stage, allegations of 'tacit approval of, acquiescence in, or purposeful disregard of, rights-violating conduct' will defeat a motion to dismiss predicated on Rule 12(b)(6)."[48]

---

[46] Rec. Doc. No. 72, p. 5.
[47] *Id.* at p. 8.
[48] *Camilo–Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir.1998).
58462

*Cleveland v. Gautreaux*,[49] a case in this District, is analogous and instructive. In that case, the surviving family members of an inmate who died in East Baton Rouge Parish Prison (EBRPP) brought, *inter alia*, a claim for supervisory liability against the prison officials who, they alleged, implemented a constitutionally deficient medical treatment policy that led to the death of the inmate. Reiterating that the supervisory liability doctrine requires the allegation of more than merely a single, wrongful act, the Court held as follows:

> Plaintiffs' allegations are sufficient to support constitutional claims against [the officials] in their individual capacities because, considered in toto, they state a factual basis for determining that both men knew or should have known of that EBRPP's system was so deficient as to expose prisoners with ailments similar to Cleveland's own to substantial risk of significantly unmet serious medical needs—i.e., was unconstitutional—and failed to properly attempt to correct it, and that their actions or inactions in this respect caused Cleveland's fatality.[50]

The plaintiffs in *Cleveland* alleged that the deficient policy caused the "untimely death of three other pretrial detainees"[51] at EBRPP and that prison officials had engaged in "inadequate treatment of Cleveland over a period of weeks and [] similarly deficient treatment of other inmates over a period of two years."[52] Obviously, three untimely deaths is greater than the one other suicide alleged by Plaintiff in the instant case. Fundamentally, however, the allegations in *Cleveland* are analogous to the allegations herein insofar as they also state some small number of other, related incidents and a pattern of deficient treatment as to other similarly situated inmates.

---

[49] 198 F. Supp. 3d 717 (M.D. La. 2016), Judge deGravelles.
[50] *Id. at* 740
[51] *Id.* at 738.
[52] *Id.* at 739.
58462

Defendants also argue that the cited policies fail with respect to causation because Plaintiff alleges that Terrance Carter was evaluated by mental health personnel within 30 days of being placed in Camp J and that he was seen twice, including a visit the day before his suicide. Thus, Defendants argue, "there are no factual allegations to support the conclusory statement that the absence of a pre-segregation mental health evaluation caused Carter's death."[53] This argument misrepresents Plaintiff's claim. She does not allege that Terrance Carter was not seen by mental health personnel *at any point*; she alleges that Carter "suffered thirty days in solitary, thirty days of mental deterioration and increasing hallucinations, thirty days he could have been spared if DOC or the prison had an adequate policy."[54]

Although the Court now holds in Plaintiff's favor on this claim, an error bears correcting. In her *Opposition*, Plaintiff cites the United States Supreme Court for the proposition that "an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business."[55] The case cited by Plaintiff is inapposite as that holding pertains to an *official capacity* claim under § 1983. The *Second Amended Complaint* is clear that Secretary LeBlanc is sued in his *personal* capacity only.[56]

The Court finds that the allegations in the *Second Amended Complaint* adequately state a claim for supervisory liability against Secretary LeBlanc in his personal capacity. Accordingly, Defendants' *Motion to Dismiss* shall be denied in this respect.

---

[53] Rec. Doc. No. 76-1, p. 8.
[54] Rec. Doc. No. 82, p. 6.
[55] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).
[56] Rec. Doc. No. 72, p. 7, ¶ 42.
58462

      b.  Warden Burl Cain, Warden Darryl Vannoy, Deputy Warden Leslie Dupont

In its previous *Ruling*, the Court dismissed the claims as to Cain, Vannoy, and Dupont because Plaintiff's allegations were insufficient to support any theory of liability against them. Now, in the *Second Amended Complaint*, Plaintiff reformulates her allegations against these three officials, centering them around a set of policies that she alleges each was involved with. Specifically, Plaintiff cites the following policies: "LSP Directive 10.001, Lockdown, LSP Directive 10.013, Camp J Management Program, and LSP Directive 13.019, Suicide Prevention, Intervention, and Post-Suicide Management."[57] Per Plaintiff, these policies are constitutionally deficient because:

> None of the aforementioned policies required screening of inmates for acute mental distress or mental health issues prior to their placement in administrative segregation or the Camp J Management Program. None of these policies required a member of mental health or treatment to sit on the disciplinary review board for inmates initially placed into Camp J's Management Program. Finally, none of these policies required any mental health screening or treatment for inmates placed in solitary or segregation until 30 days after such placement. At which time the evaluation was not required to include a conversation with the inmate.[58]

As to Warden Cain, Plaintiff alleges that he "drafted, revised, and repeatedly implemented"[59] these policies; Dupont is alleged to have "drafted and repeatedly implemented"[60] them, while Vannoy is only alleged to have "implemented"[61] them. All three are sued only in their personal capacities.

---

[57] Rec. Doc. No. 72, p. 8.
[58] *Id.* at p. 9.
[59] *Id.* at p. 8.
[60] *Id.* at p. 9.
[61] *Id.* at p. 10.
58462

As previously discussed, as to Secretary LeBlanc, the drafting and/or revision of these policies is not an adequate allegation of personal involvement. Thus, if Plaintiff's claims have a path forward, it is in the form of a supervisory liability claim related to the allegedly deficient policy, not any overt acts taken by Defendants that allegedly caused Carter's death. Again, "[s]upervisory liability can be established without direct participation in the alleged events if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[62] Defendants contend that Plaintiff's claims as to Cain, Vannoy, and Dupont should be dismissed because Plaintiff "has not successfully pled that the policy was so constitutionally deficient as to give rise to supervisory liability."[63] Defendants claim that the Court already held as much in its previous *Ruling*, which is true; however, that holding was based on the significantly less specific allegations in the *Amended Complaint*. The *Second Amended Complaint* raises plausible questions as to whether or not the policies were constitutionally deficient, a question that goes to the merits and is inappropriate for resolution at this stage. Although Defendants repeatedly insist that the policies are not constiutitonally deficient, their argument is conclusory. They simply describe the contents of the cited policies and state that the policy is constitutionally acceptable because, for example, it "clearly provide[s] for mental health treatment for all inmates, including inmates house[d] in lockdown and within Camp J." But Plaintiff does not claim that the inmates in Camp J get *no* mental health treatment; she claims that the provided treatment is inadequate. Defendants' arguments for dismissal based on causation and the "single,

---

[62] *Brown v. Bolin,* 500 Fed. Appx. at 314; *Cozzo v. Tangipahoa Par. Council–President Gov't*, 279 F.3d 273, 289 (5th Cir. 2002).
[63] Rec. Doc. No. 76-1, p. 11.
58462

wrongful act" doctrine likewise fail, for the reasons described above with respect to Secretary LeBlanc. Accordingly, Defendants' Motion to Dismiss is denied with respect to the § 1983 claims against Cain, Vannoy, and Dupont.

## 2. Deliberate Medical Indifference Under § 1983

To prevail on an Eighth Amendment claim for the deprivation of medical care, a plaintiff must allege and show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."[64] Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue, because a prisoner's mere disagreement with his medical treatment, absent exceptional circumstances, does not support a claim of deliberate medical indifference.[65] Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.[66] Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.[67] A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it."[68]

In its previous *Ruling*, the Court held as follows:

> The deliberate indifference standard sets a very high bar. Plaintiff Irma Jean Carter must allege that prison officials refused to treat [her son], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious

---

[64] *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014)(citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).
[65] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).
[66] *See Zaunbrecher v. Gaudin*, 641 F. App'x 340 (5th Cir. 2016).
[67] *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994).
[68] *Gobert*, 463 F.3d at 346, quoting *Farmer*, 511 U.S. at 847.
58462

medical needs. Based on the allegations in her *Complaint*, Plaintiff has not cleared that high bar.[69]

The *Amended Complaint* averred generally that Carter had "mental health issues" of which Defendants were or should have been aware. By contrast, the *Second Amended Complaint* specifically alleges that Carter "was given three referrals to see the prison psychiatrist" and that "not once between 2008 and his ultimate death by suicide at Camp J on April 2, 2016, was he allowed to obtain this referral or speak with the prison psychiatrist."[70] Plaintiff also alleges that upon Carter's arrival at LSP in 2008, he "disclosed a history of depression, outpatient psychiatric treatment, a previous prescription for Risperdal, and prior placement on suicide watch."[71] Despite that disclosure, Carter's Risperdal was allegedly not being administered, inasmuch as Plaintiff alleges that Carter "asked to be placed back on his medication"[72] in November 2008.

Plaintiff avers that in 2011, Carter's complaints about his body odor began. In October 2014, Dr. Randy Lavespere referred Carter to the prison psychiatrist because he was allegedly "concerned about possible olfactory hallucinations."[73] Per Plaintiff, Carter did not see the psychiatrist despite the referral. Dr. Lavespere allegedly "renewed" the referral on June 8, 2015, but again, Plaintiff alleges, Carter was not seen.[74] Moreover, after a disciplinary infraction in February 2016, Carter was sentenced to administrative segregation; Plaintiff claims that he "was not evaluated for acute mental distress, nor was

---

[69] *Ruling,* Rec. Doc. No. 62, p. 23 (internal quotations and citations omitted).
[70] Rec. Doc. No. 72, p. 1.
[71] *Id.*
[72] *Id.* at p. 2.
[73] *Id.*
[74] *Id.*

58462

his medical or mental health chart reviewed for his mental health history or medication history before he was placed in administrative segregation."[75]

The problem with Plaintiff's allegations is that none of the actual Defendants herein are alleged to have been personally involved in the allegedly deliberately indifferent medical treatment that Carter received. In her *Opposition* to the instant motion, Plaintiff ascribes the deliberately indifferent care to would-be Defendants Thomas and Worsham, noting that it was *their* "failure to ensure inmates are evaluated by a psychiatrist when they are referred to one, as well as their failure to provide adequate mental health treatment to Mr. Carter at Camp J and throughout his time at the prison."[76] Having ruled above that Thomas and Worsham cannot be added as Defendants at this point in the action, the Court finds that the allegations surrounding Thomas and Worsham's actions cannot form the basis for a successful deliberate indifference claim against the named Defendants.

Without personal involvement by the Defendants in the alleged violation, they can only be individually liable for deliberate medical indifference based on a theory of supervisory liability. In the Fifth Circuit, "to support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor.[77] A supervisory official is liable if he or she demonstrates deliberate indifference to a plaintiff's constitutionally protected rights."[78] The Fifth Circuit has also held that "'doctors may not be held liable for § 1983 violations under a theory of

---

[75] *Id.* at p. 3.
[76] Rec. Doc. No. 82, p. 8.
[77] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010)(citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)).
[78] *Id.* (citing *Doe*, 15 F.3d at 454).
58462

*respondeat superior* or vicarious liability, based upon claimed omissions by the nurses."[79] A supervisor can, however, be held liable when he was himself deliberately indifferent."[80] To hold a defendant supervisor liable on such a theory, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[81]

Although Plaintiff labels Count Two in her *Second Amended Complaint* as "Deliberate Medical Indifference,"[82] she struggles to differentiate this claim from her other § 1983 claims. Both Count One and Count Two set forth Eighth and Fourteenth Amendment claims under § 1983, and a close reading of Plaintiff's allegations highlights that the deliberate medical indifference claim is, after removing the allegations pertaining to Thomas and Worsham, essentially identical to Count One and its policy-based claims. For example, although Plaintiff makes passing and conclusory reference to "inadequate training, supervision, and discipline of mental health personnel"[83] under Count Two, she does so under a heading alleging that Defendants are liable because of their "written and unwritten policies."[84] Plaintiff next alleges that Defendants had "inadequate and unacceptable policies, procedures, and practices relating to placing persons on suicide watch" and "inadequate and unacceptable policies, procedures, and practices relating to treatment, observation, and monitoring of persons who are suicidal, in acute mental

---

[79] *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015)(quoting *Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999)).
[80] Id.
[81] *Id.*, quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998) (internal quotation marks omitted).
[82] Rec. Doc. No. 72, p. 24.
[83] *Id.* at p. 25.
[84] *Id.*

58462

distress, or in need of care for serious medical issues."[85] These policy-based allegations are not cognizable as a separate claim for deliberate medical indifference; the allegations clearly re-state a claim for supervisory liability based on Defendants' alleged implementation of constitutionally deficient policies. Likewise, in her *Opposition* to the Motion to Dismiss, Plaintiff focuses on deficient policies, arguing that that "Defendants promulgated policies allowing, and in some cases ordering, mentally ill inmates to solitary with full knowledge that this would increase the risk . . ."[86] And, she argues, "defendants failed to take reasonable measures to abate this risk, thereby creating unconstitutional conditions of confinement. . ."[87] As to the remaining Defendants, Plaintiff does not allege deliberately indifferent medical treatment; she alleges that they promulgated unconstitutional policies. That is coextensive with her allegations and arguments under Count One. Therefore, the Court finds that Plaintiff has failed to state a separate claim for deliberate medical indifference; that claim will be dismissed with prejudice.

## C. Plaintiffs' Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") Claims

Defendants also move to dismiss Plaintiff's claims under the ADA and RA. In its previous *Ruling*, the Court held "that Plaintiff's allegations, if found true, would set forth a cognizable claim for discrimination under the ADA."[88] Plaintiff argues that the motion should be denied because Defendants are "precluded from attacking an issue this Court has already decided."[89] Defendants, however, point out that the Court's previous *Ruling*

---

[85] *Id.* at p. 26, p. 27.
[86] Rec. Doc. No. 82, p. 9.
[87] *Id.*
[88] Rec. Doc. No. 62, p. 29.
[89] Rec. Doc. No. 82, p. 11.
58462

was based heavily on the allegation "that Carter was sentenced to six months of Camp J, while other inmates were sentenced to a few weeks for similar infractions"[90] – an allegation that does not appear in the *Second Amended Complaint*. Defendants also note that this Court based its holding on the allegation that Carter "believed his lengthy time at Camp J was retaliation because of his complaints about his odor problem"[91] as making the necessary showing that Carter was discriminated against *because of* his disability. The *Second Amended Complaint* removes that allegation as well.

Plaintiff contends that the removal of those allegations is of no moment because the Court "did not rely on that allegation alone to hold Plaintiff properly pleaded 'every element'"[92] of her ADA claim. Further, Plaintiff contends that despite the removal of certain allegations, the *Second Amended Complaint* offers *new* allegations to support the claim that Carter was discriminated against due to his alleged disability. But many of the allegations that she cites for this purpose[93] were stricken by this Court, *supra* at page 3, because they exceeded the scope of leave to amend granted by this Court.

This Court's previous *Ruling* made clear that assessing the sufficiency of Plaintiff's allegations was a close call but concluded that the ADA claim would survive the motion to dismiss because of two allegations in particular – the two allegations now removed from the *Second Amended Complaint*. The Court explained that although in some ways, Plaintiff's ADA claim more closely resembled a claim for inadequate medical treatment, the ADA claim "finds stronger footing"[94] with the allegations that are no longer part of the

---

[90] Rec. Doc. No. 76-1, p. 14.
[91] Rec. Doc. No. 62, p. 28-29.
[92] Rec. Doc. No. 82, p. 10.
[93] *Id.* at pp. 10-11.
[94] Rec. Doc. No. 62, p. 28.
58462

Plaintiff's *Complaint*. The Court rejects Plaintiff's argument that Defendants are somehow precluded from raising the sufficiency of the ADA claim at this stage; the *Second Amended Complaint* is now the operative complaint, and whether the Court found the allegations in a previous complaint to be sufficient does not control the result herein. Because the operative complaint removes the allegations upon which this Court relied in its previous Ruling, and because the newly-added allegations that Plaintiff cites are stricken by this *Ruling*, Defendants' *Motion to Dismiss* shall be granted as to Plaintiff's ADA and RA claims.

### D.  State Law Claims

Plaintiff's state law claims survived the previous *Motions to Dismiss* and remain a part of this action, but the state law claims against Thomas and Worsham shall be dismissed for the reasons stated above.

## III. CONCLUSION

For the reasons set forth above, Defendants' *Motion to Dismiss*[95] is granted in part and denied in part. All claims against Defendants Kristen Thomas and Justine Worsham are hereby dismissed with prejudice, along with Plaintiff's deliberate medical indifference and ADA/RA claims. Additionally, Paragraphs 17, 18, 19, 20, 21, 22, 24, 26, 27, 28, 29, 30, 55, 56, 57, 58, 71, 72, 73, 77, 78, 142, 143, and 144 are hereby stricken from the *Second Amended Complaint*.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 17, 2020</u>.


**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[95] Rec. Doc. No. 76.

58462